JOHN C. BYXBEE ET AL. *vs.* CHARLES N. BLAKE ET AL.

Third Judicial District, New Haven, January Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A tenant who holds over after the termination of his tenancy is liable for an additional month's rent, whether his previous occupancy was one for monthly periods with no fixed time of termination, or

a definite hiring for one particular month; and this is true irrespective of the provisions of § 2967 of the General Statutes.

The tenant's manager, on the last day of the month, offered the keys of a store, which had been occupied for a year or more under a parol lease, to the landlord, who refused to accept them, whereupon the manager kept the keys for five days to clean up the store and remove trade fixtures, then left the keys in the landlord's office, and two days later removed the sign on the front of the building. *Held : —*

1. That even though the stock of goods had been removed and the tenant's business discontinued, possession was not surrendered to the landlord at the close of the month, and that the conduct of the tenant was a holding over which would subject him to the payment of an additional month's rent.

2. That as these acts were done by the defendant's general manager, who was in sole charge of the store and the defendant's business, they were in legal effect the acts of the defendant himself.

Argued January 30th—decided March 5th, 1902.

ACTION to recover a month's rent, brought to the City Court of Meriden and tried to the court, *Platt, J.;* facts found and judgment rendered in favor of the plaintiffs as against the defendant Barrows, and appeal by the latter for alleged errors in the rulings of the court. *No error.*

The finding contains the following statement of facts pertinent to the decision : " 1. Some time in the year 1899, C. N. Blake, then a retail shoe dealer, doing business in Meriden under the name of C. N. Blake & Co., and occupying the store hereinafter referred to, made an assignment for the benefit of his creditors. 2. H. D. Barrows, of New London, bought of the trustee the stock of goods located in the store in Byxbee Block owned by the plaintiffs, which had been formerly leased by Blake, including in said purchase the good-will of Blake's business. 3. Barrows continued the business in the same store under the name of C. N. Blake & Co. up to the time of this controversy, under the personal supervision and management of the said Blake. 4. The moneys received from the business were deposited in bank by Blake in the name of C. N. Blake & Co., and checks were drawn thereon monthly to the order of the plaintiffs for $83.33, but no special contract was made by Barrows as to

Byxbee et al. *v.* Blake et al.

the duration of such tenancy. 5. Such checks for rent were given and paid up to and including the month of December, 1900. 6. In November, 1900, Barrows, in person and through Blake, notified the plaintiffs that he intended to change his location; but that as his new store might not be completed in time he doubted if he could be entirely ready to make his change by the end of that month, and tried to bargain for the use of the store by the day during the early part of December. 7. The plaintiffs declined to make such an arrangement, and notified Barrows that if he occupied the store for any time after the last day of November they should hold him responsible for the rent for the entire month of December. 8. After this notice the tenancy continued as before during the month of December. 9. In the latter part of December it was agreed between the parties that when he should quit the store the tenant might for a short time leave the gas fixtures attached thereto, with the hope of disposing of them to any succeeding tenant. 10. About six o'clock in the afternoon of the last day of December, 1900, Blake, acting for Barrows, notified the plaintiffs that the goods were nearly out of the store, and that they would all be out that evening, and asked what he should do with the keys. 11. The plaintiffs replied that they did not care what he did with them, as they could not and would not accept them. 12. They had previously said that they thought they could hold him responsible for the rent for the balance of the year, which would end in April, and their contention on that point had its influence in determining them to refuse to accept the keys. 13. Blake told the plaintiffs that he would like to retain the keys a few days, and occupy the store for the purpose of cleaning it up, and leaving it in good order. To this the plaintiffs made no reply. 14. Blake did retain the keys, remained in possession, cleared out the rubbish, removed several articles used as trade fixtures, which had been taken down and left in the store, and finally offered the keys to the plaintiffs on January 5th. On January 7th he took down the sign from the store front, which bore the words ' C. N. Blake & Co., ' and had been there before and since the purchase by

Barrows. 15. The plaintiffs did not accept the keys, and Blake placed them on a window seat in the room where he found one of the plaintiffs, and left them there. . . . 20. No stock of goods remained in the store after December 31st, and no regular shoe business was carried on therein by the defendants after that date. "

*Hadlai A. Hull*, for the appellant (defendant Barrows).

*George A. Fay*, for the appellees (plaintiffs).

PRENTICE, J. Whatever construction is put upon the somewhat meager facts contained in the finding, in determining the nature of the defendant's tenancy, the result is the same as to the effect of a holding over after the end of any month.

If it be held, as the plaintiffs claim, that the facts—involving as they do the payment and acceptance for more than a year of a monthly rental—raise an implied agreement for a tenancy for monthly periods with no fixed time of termination, the defendant would, by holding over beyond the end of any month, become liable for an additional month's rent. *Bacon* v. *Brown*, 9 Conn. 334; *Miller & Co.* v. *Lampson*, 66 id. 432; *Anderson* v. *Prindle*, 23 Wend. 616; *Steffens* v. *Earl*, 40 N. J. L. 128, 137; *Hollis* v. *Burns*, 100 Pa. St. 206, 208; *Brewer* v. *Knapp*, 1 Pick. 332; *Blumenberg* v. *Myres*, 32 Cal. 93; 18 Amer. & Eng. Ency. of Law, 405.

If, on the other hand, it be held, as the defendant contends, that there was during the month of December a tenancy under an express agreement for that month, the result would be the same. *Stoppelkamp* v. *Mangeot*, 42 Cal. 316; *Brewer* v. *Knapp*, 1 Pick. 332; *Coffin* v. *Lunt*, 2 id. 70; *Bright* v. *McOuat*, 40 Ind. 521, 527; Taylor's Landlord & Tenant, § 57.

These results would follow quite apart from the operation of § 2967 of the General Statutes, which therefore need not be considered.

The only question left for consideration is whether or not

the court erred in ruling that upon the facts the defendant held over after December 31st, up to which time he paid the rent. We think that no other conclusion could have been consistently reached. During the late afternoon of December 31st Blake, who was the defendant's manager, notified the plaintiffs that the defendant's goods were nearly out of the store and that they would all be out that evening, and asked what he should do with the keys. The plaintiffs replied that they did not care what he did with them, as they could not and would not accept them. Blake then said that he would like to keep the keys a few days and occupy the store for the purpose of cleaning it up and leaving it in good order. To this statement no reply was made. The keys were kept. There was no attempt to deliver or tender them until five days later. Meantime Blake remained in possession, cleaned out the rubbish, and removed some articles used as trade fixtures. This having been done, Blake, on January 5th, offered to the plaintiffs, the keys which were not received. On the 7th the firm's sign was taken down. Subsequent history does not concern the result. After December 31st no stock of goods remained in the store and no regular business was there carried on by the defendant.

These facts clearly establish (1) that actual possession of the store was withheld from the plaintiffs until January 5th; (2) that no attempt to make formal delivery of possession was ever in fact made before that date; (3) that the plaintiffs never did or said anything which would amount to a waiver of the actual vacation of the premises; (4) that the continued possession was the same in outward appearance after as before December 31st, to wit, a possession directed and controlled by Blake; (5) that the plaintiffs never consented to any occupancy without payment of rent; (6) that the plaintiffs never accepted any tenant in substitution for the defendant.

The only one of these conclusions calling for discussion is the first, and this needs little. The court has found it as a fact. He has found that Blake was in possession. Although there was no stock of goods remaining and no regular busi-

ness done, the store clearly was not vacated. Possession thereof was not surrendered to the landlord within the meaning of the law, or the doctrine of any case known to us. *Thomas* v. *Frost*, 29 Mich. 336; *Haynes* v. *Aldrich*, 133 N. Y. 287.

The situation was not one where the tenant had simply failed to remove a few articles. It was one where there continued to be upon the premises the actual bodily presence of an occupant who was not in through or under the plaintiffs. This occupant was none other than the defendant's manager. If it had been the defendant instead of Blake, and the defendant had been present throughout the events of December 31st and the following days, doing and saying what Blake did and said, there would be little plausibility to a claim that he had either in fact or legal effect vacated the premises. In saying this we place no stress upon the failure to deliver up the keys. Possibly it might be said that that formality had been waived. There certainly had been no waiver of removal. Until there had been such removal the defendant was in no position to take advantage of any advance refusal to receive the keys or acknowledge a surrender. He was bound, as a condition precedent to the exercise of any claim of surrender, to vacate. As long as he occupied, there was no escape, without the consent of the landlord, from a holding over. We therefore have no need to inquire what would have been the result if he had, under the circumstances, not occupied.

We are thus brought to the only remaining question, as to the effect of Blake's acts and occupancy. Were they in legal effect the acts and occupancy of the defendant? This question admits of only an affirmative answer. Blake was, and from the beginning had been, the manager of the defendant's business as conducted in the store in question. The defendant, after his purchase of the business, nowhere personally appears in the finding. Blake invariably acts for him. Blake was the defendant's representative in the removal of the business, the vacation of the store, and its surrender to the landlord. He was the defendant's representative in the interview of December 31st. This the defendant concedes,

since he desires to avail himself of the benefit of Blake's acts down to a certain point. Then, forsooth, it is contended that Blake suddenly appeared in a new role, and from the moment when he asked to retain the keys assumed the character of a person acting for himself, and no longer represented his principal. Why he should be anxious to personally undertake a duty with respect to the premises which would naturally devolve upon his principal is not suggested. What there is in the finding to support the contention we fail to discover. There is no statement to that effect. There can arise no implication to that effect, unless it arise from the fact that the court in its narrative of the facts, after setting out Blake's managerial relations, failed in its recital of his acts and words to qualify them in each separate instance by words expressive of his agency. The narrative in the finding follows the natural course. After giving a part of the conversation between Blake and the plaintiffs, the former's next act is given. Only a most strained construction, and one which leads to most unnatural consequences, can give any color at all to this claim to which the exigencies of the defendant necessarily drive him.

These considerations take no account of the unfairness to the plaintiffs of such a construction. Dealing with the defendant's manager in a matter of the defendant's business which he had long conducted, they were justified in regarding Blake as acting, as he in fact was, for the defendant, and as having full authority to act in the matter in hand. He cannot be heard to say that Blake's authority extended only to a certain point. The jugglery of a change of character to the plaintiffs' harm, without a word of warning to them, or ground for suspicion on their part, cannot be permitted.

Clearly Blake, throughout the whole matter in controversy, was in legal effect the defendant himself. Such being the case, the judgment of the court below, which was for the rent of the store for the month of January, was, upon the finding, justified.

There is no error.

In this opinion the other judges concurred.