BRUNO WELK *v.* ADRIEL J. BIDWELL

BROWN, JENNINGS, BALDWIN, INGLIS AND O'SULLIVAN, JS.

Argued March 9—decided April 25, 1950.

*Samuel Steinberg,* with whom, on the brief, was *Walter F. Foley,* for the appellant-appellee (plaintiff).

*Philip Bayer,* for the appellant-appellee (defendant).

INGLIS, J.   The question raised by the plaintiff's appeal in this action is whether in the case of a month-to-month tenancy the tenant, by holding over after the landlord has notified him of an increase of rent, becomes obligated to pay that increase in spite of his protest.   On the defendant's appeal the questions are, first, whether the trial court erred in concluding that there had been no constructive eviction by the landlord and, second, whether the court erred in concluding that the plaintiff was not liable to the defendant for damage to the defendant's personal property stored in the rented premises.

The facts found may be summarized as follows: The plaintiff was the owner of a farm in Glastonbury upon which stood a tobacco barn.   The defendant owned and

occupied property directly across the highway and was engaged not only in farming but also in the sale and exchange of new and used farm machinery and equipment. In January, 1946, the defendant leased from the plaintiff his entire tobacco barn, with the stipulation that the defendant should have the "right of way thereto and entry guaranteed to premises," on a month-to-month basis for a monthly rental of $10. Thereafter, the defendant stored in the barn a large quantity of farm machinery, tractors, grain, small tools and other items and, to protect that property, he put hasps and padlocks on the barn doors.

About May 1, 1946, the plaintiff notified the defendant that he should either remove his property or thereafter pay $125 per month rent. The defendant refused to pay such a sum, saying that it was an outrageous price. Thereafter, the defendant continued to occupy the premises and periodically tendered to the plaintiff the rent at the rate of $10 per month. He has at no time either expressly or impliedly agreed to pay $125 per month rent but, on the contrary, has at all times claimed the right of occupancy at the rate of $10 per month.

In March, 1947, the plaintiff nailed up the barn doors, attached padlocks of his own to the hasps upon which the defendant had his locks and strung a cable across the driveway so that vehicular access to the barn was cut off. Thereafter, the defendant gained access to the barn by crawling through a small door and in that way removed small tools from, and placed other small tools in, the barn. He at no time claimed that he had been constructively evicted from the property, nor did he take any legal measures to reclaim his goods. During the period in question the roof of the barn became leaky and, as a result, some damage was caused

to the equipment stored in the building, but the amount of that damage was not proved.

The trial court concluded that there had been no constructive eviction of the defendant and that he was liable to the plaintiff for rent at the rate of $10 per month from May 1, 1946, to the date of trial, a total of thirty-six months. On the defendant's counterclaim it was decided that the plaintiff was not liable for any damage to the defendant's goods.

On the question whether a landlord, by giving notice to his tenant before the expiration of the term of the lease that if the latter continues in possession of the leased property after the expiration of his term he must pay an increased rent, may obligate the tenant to do so even though the tenant refuses to acquiesce in the increase, there is a sharp conflict in the authorities. About half of the jurisdictions in which the question has been passed upon hold that he may and the other half hold that he may not. 32 Am. Jur. 800; note, 109 A. L. R. 197, 203, 205. The reasoning by which some of the courts reach the conclusion that the tenant becomes bound to pay the increased rent is, in substance, that a tenant has no right to occupy the property except upon the terms fixed by the landlord and if those terms are not acceptable the tenant is free to vacate. *Abraham* v. *Gheens*, 205 Ky. 289, 292, 265 S. W. 778. The answer to that line of reasoning is that, where, as in this state, provision is made for the ousting of a tenant by summary process on the expiration of a lease, the landlord is as free to oust the tenant as the tenant is to vacate, if the terms upon which the tenant proposes to hold over are not acceptable to the landlord.

The crux of the matter lies in the fact that a lease is a contract. In the case of a rental on a month-to-month basis the tenancy is not regarded as a continu-

ous one. The tenancy for each month is one separate from that of every other month. *Corrigan* v. *Antupit,* 131 Conn. 71, 76, 37 A. 2d 697; *Chipman* v. *National Savings Bank,* 128 Conn. 493, 497, 23 A. 2d 922; *Williams* v. *Apothecaries Hall Co.,* 80 Conn. 503, 506, 69 A. 12. For each month, therefore, there must be a new contract of leasing. Where there has been no meeting of the minds there is no contract. If a landlord insists on one rate of rental and the tenant insists on another, there is no meeting of the minds.

Our statute (General Statutes § 7106) provides: "No holding over by any lessee, after the expiration of the term of his lease, shall be evidence of any agreement for a further lease . . ." The fact that the defendant in this case held over in possession of the property after the expiration of his lease for the month of April, 1946, did not in itself create a lease for the subsequent month. The parties were free to make a contract for the future occupancy of the property. If there had been no dispute between them as to the terms of the future occupancy, the holding over by the tenant and the acquiescence therein by the landlord would have raised such a contract by implication. *Williams* v. *Apothecaries Hall Co.,* supra; *Byxbee* v. *Blake,* 74 Conn. 607, 610, 51 A. 535. Indeed, if the landlord had specified terms for the future occupancy of the property, the continuance in possession by the tenant without objection by him to those terms might have been construed as an acceptance of those terms and thus a contract would have been implied from the conduct of the parties. *Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 288, 158 A. 548; *Margolis* v. *Wise,* 91 Conn. 152, 156, 99 A. 511. But if there had actually been no meeting of the minds either because of ambiguity or uncertainty in negotiations or because the negotiations had not been completed, then,

of course, there could have been no contract. *Shulman v. Hartford Public Library,* 119 Conn. 428, 432, 177 A. 269; *Margolis* v. *Wise,* supra. If a tenant remains in possession without the consent of the landlord, there is no contract for an extended term to be implied from the holding over. *City Coal Co.* v. *Marcus,* 95 Conn. 454, 465, 111 A. 857. A fortiori, where the parties are in definite dispute as to any of the essential terms of a new tenancy, certainly no lease can be implied from the fact that the tenant holds over.

It is clear that the plaintiff could not, by merely giving notice to the defendant that he should either remove his property from the premises or thereafter pay $125 a month rent, impose upon the defendant a lease for the ensuing months at that rental. The defendant's flat refusal to agree to pay that rent left the parties without any contract with reference to the occupancy of the property. The question, therefore, arises as to what was the nature of the defendant's tenancy after May 1, 1946. He was not a trespasser, because he had entered into possession of the property prior to that time under a lease which gave him the right of possession. The plaintiff could have revoked that right and recovered the right of possession by peaceable entry or by way of summary process. *Mason* v. *Hawes,* 52 Conn. 12, 16; see *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218, 224, 167 A. 728. This he did not do. The defendant was not a tenant at will, because such a tenancy exists only when the occupation of the property is with the landowner's consent, continuing during the tenancy. *Radican* v. *Hughes,* 86 Conn. 536, 543, 86 A. 220; *Corbett* v. *Cochrane,* 67 Conn. 570, 576, 35 A. 509; 32 Am. Jur. 81. Obviously, here, the plaintiff was not consenting to the defendant's continued possession. A tenancy at sufferance arises when a person who came into possession

of land rightfully continues in possession wrongfully after his right thereto has terminated. Restatement, 1 Property § 22; 32 Am. Jur. 88. That is the situation in this case. The defendant, prior to May 1, 1946, was rightfully in possession of the property. After that date he held over without a lease and was in wrongful possession. Accordingly, he was after that date, a tenant at sufferance. *Colyear* v. *Tobriner,* 7 Cal. 2d 735, 742, 62 P. 2d 741, *School District No. 11* v. *Batsche,* 106 Mich. 330, 334, 64 N. W. 196.

As a tenant at sufferance, the defendant was not liable for any stipulated rent. He was not obligated to pay the $125 per month demanded by the plaintiff. Nor was his obligation fixed at the rate of $10 per month which he had been paying. His obligation was to pay the reasonable rental value of the property which he occupied. *Colyear* v. *Tobriner,* supra, 743; *Meaher* v. *Pomeroy,* 49 Ala. 146, 148; *McGrath* v. *Snell,* 162 Ill. App. 635, 637; *Abrams* v. *Sherwin,* 269 Pa. 31, 33, 112 A. 235; 32 Am. Jur. 792, § 938. The trial court made no finding as to the reasonable rental value of the property but instead assessed damages on the basis of the former rent of $10 per month. This was error.

The second question is whether the trial court should have concluded that the barring of access to the building by the plaintiff constituted a constructive eviction of the defendant and thereby terminated the latter's liability for rent. The trial court has found that, although the plaintiff obstructed the driveway to the building and put padlocks on some of the doors, the defendant continued thereafter to enter the building to remove small tools therefrom and also continued to tender rent. To take advantage of a constructive eviction the tenant must abandon the property within a reasonable time. *Cerruti* v. *Burdick,* 130 Conn. 284,

288, 33 A. 2d 333; 32 Am. Jur. 236, § 250. In view of the finding, we cannot say that the trial court's conclusion that the defendant had not abandoned the property was unreasonable. The effect of a constructive eviction is that it relieves the tenant of his obligation to pay rent. The mere fact, therefore, that, after a landlord has committed the acts which are claimed to constitute a constructive eviction, the tenant continues to pay or tender the rent is a clear indication that he has elected not to treat the landlord's conduct as an eviction. Accordingly, we cannot hold that the trial court erred in concluding that there had been no constructive eviction.

In his counterclaim the defendant alleged that the plaintiff allowed the shed in question to deteriorate into a state of disrepair and, as a result of the poor condition of the building, the defendant suffered the loss and deterioration of much of the property he had stored therein. The trial court rightly concluded that inasmuch as the plaintiff had never agreed to keep the shed in repair he was not liable to the defendant for any damages resulting from such lack of repair. A landlord owes no duty to his tenant to keep the leased premises in repair unless he has agreed so to do. *Palimas* v. *Aress Realty Co.*, 130 Conn. 687, 692, 37 A. 2d 243; *Papallo* v. *Meriden Savings Bank*, 128 Conn. 563, 564, 24 A. 2d 472; *Chambers* v. *Lowe*, 117 Conn. 624, 628, 169 A. 912.

It is true that before trial the defendant amended his counterclaim to allege that "since March 30th, 1947, the plaintiff has blockaded and prohibited the defendant's access to the shed and the defendant's goods contained therein." He did not allege, however, that damage to his goods was the result of that blockade. Accordingly, even though the trial court could have

concluded that the blockade was a violation of the defendant's rights, it would not have been justified in awarding damages for such violation because the causal relationship between the claimed injury and the claimed damage had not been alleged.

The defendant also assigns error in the exclusion of evidence of the obsolescence of the defendant's property while the blockade was in effect. Inasmuch as the conclusion of the trial court that the defendant was not entitled to any damages must stand, it is not necessary to pass upon the question raised by this assignment of error.

There is error on the plaintiff's appeal but no error on the defendant's appeal. The judgment is set aside and the case is remanded for a new trial of the issues framed upon the complaint but with direction to enter judgment for the plaintiff upon the counterclaim.

In this opinion the other judges concurred.