STATE OF CONNECTICUT *v.* MARY SALLAK

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 9-6510-2858

Argued November 27, 1967—decided January 26, 1968

*Edward Olson, Jr.,* of Berlin, for the appellant (defendant).

*Joseph Neiman,* of Hartford, for the appellee (plaintiff).

KOSICKI, J. The state, acting through its highway commissioner, brought suit for the value of the use and occupancy of property which had previously been taken for highway purposes. The case was tried on a stipulation of facts which presents the

following situation. On September 19, 1963, the state highway commissioner, pursuant to his authority under § 13a-73 of the General Statutes, filed a notice of taking of the defendant's land for highway purposes. The filing was with the clerk of the Superior Court for Middlesex County, in which the property was located. On that date, the plaintiff deposited with the clerk $14,000 for the condemnation award fund, and the defendant was so notified. This sum was then available to the defendant on her request, subject to the order of the court.

On April 7, 1964, the defendant moved in court for the payment of the $14,000, and it was paid on or about April 30, 1964. From the date of taking and the deposit of the assessment of damages, the defendant continued to occupy the premises until she vacated them on February 29, 1964. On October 31, 1963, the defendant was notified by the plaintiff that, beginning November 1, 1963, the defendant was to pay the plaintiff $70 per month for use and occupancy of the condemned property. It was stipulated that this represented a reasonable value for use and occupancy of the premises. After October 31, demand for each month's payment was reasserted by certified mail, the letters being dated December 9, 1963; March 30, 1964; April 22, 1964; and June 18, 1965. All letters were received by the defendant, who refused to pay. The total amount of the use and occupancy is $280. The plaintiff waived any claim for use and occupancy from the date of taking, September 19, 1963, to November 1, 1963. The defendant was represented by counsel throughout the entire condemnation proceedings. On December 4, 1964, the Superior Court approved a total payment to the defendant of $15,100, or an increase of $1100, which additional sum was thereafter paid to the defendant. The original sum of $14,000, as noted above, had been paid to the defend-

ant on or about April 30, 1964, in accordance with the provisions of § 48-11 of the General Statutes.

The court adopted the stipulation of facts, entered into by the parties, as its own finding. The defendant assigned error in the court's rendering judgment for the plaintiff when the conclusions reached by the court do not support it. Inasmuch as the adoption by the court of the parties' stipulation did not and could not supply any conclusions reached by the court, we may consult the memorandum of decision, which is part of the record on appeal. Practice Book § 992. From this, it appears that the court concluded that under the statute (§ 13a-73), on the filing of the condemnation certificate, assessment and award, title to the property in fee simple passed to the state and thereafter the condemnee could take the money for her own use, and she became divested of any interest in the property taken.

The specific assignments raised by the defendant in her appeal are: (a) She was not given reasonable time to quit possession; (b) the entry on the books of the state did not constitute a tender to the extent that it entitled the state to use and occupancy; (c) in equity, the negligence, if any, on the part of the defendant should not permit the state to enrich itself at the expense of the defendant; and (d) "just compensation is an equitable rather than a strictly legal or technical question and encompasses the related questions of value, interest and use and occupancy." The last assignment is barely more than a paraphrase of the established rule for determining just compensation and lacks the specificity required by Practice Book § 990. There can of course be no controversy over the rules of law as stated in such cases as *Redevelopment Agency* v. *Norwalk Aluminum Foundry Cor-*

*poration,* 155 Conn. 397; *Waesche* v. *Redevelopment Agency,* 155 Conn. 44, 48; *Colaluca* v. *Ives,* 150 Conn. 521, 530.

The first assignment of error, that the defendant was not given reasonable notice to vacate, is contradicted by the stipulation of the parties. From the date of taking, September 19, 1963, to November 1, 1963, the defendant occupied the premises at no charge for rental or use and occupancy. She was entitled, at the time of taking, to payment of the assessment of $14,000, and the state had the right to immediate possession. That she declined to take the amount of the award until April 30, 1964, does not entitle her to interest on the money held for her under the provisions of § 48-11 of the General Statutes.

We need not pursue in detail the second and third assignments respecting lack of "tender" on the part of the state and that the "negligence" of the defendant should not permit the state to enrich itself at the expense of the defendant. Both claims are conclusory and have no support in the stipulation, which constitutes the finding, or in the statutes under which the proceedings were taken. As the trial court stated, "Any delay fashioned is and was caused directly or indirectly by the defendant."

The law applicable to the case before us has been cogently discussed in the learned opinion of Chief Justice Baldwin in *Salgreen Realty Co.* v. *Ives,* 149 Conn. 208, 212-14, from which we quote: "Under General Statutes § 13-145 [the predecessor of § 13a-73 (b), now in effect], the [highway] commissioner can condemn land necessary for highway purposes, and 'the owner . . . shall be paid by the state for all damages.' The assessment is made by the commissioner and 'filed by him with the clerk of the superior court in the county in which the

land affected is located.' The clerk then gives notice to the owner by mailing a copy of the assessment to him. At any time thereafter, the commissioner can begin the proposed public works. . . . In *Clark* v. *Cox,* 134 Conn. 226, 228, . . . we held that the land is taken when the assessment by the commissioner is filed. The landowner is entitled to interest at the legal rate of 6 percent (General Statutes § 37-3) from the date of the filing of the assessment to the date of payment, as a proper element of damages for the taking. *Clark* v. *Cox,* supra, 231 . . . . The General Assembly, at its special session in November, 1955, adopted what is, as amended in 1957, now General Statutes § 48-11. . . . This statute provides, in substance, that when land is taken by the state and the owner cannot agree with the state on the amount of the compensation, the taking authority shall file, with the court to which a petition for the assessment of just damages has been preferred, a statement of the sum of money estimated by the taking authority to be just compensation. This sum shall then be deposited in the court to the use of the person entitled thereto, and notice given him by the clerk. The statute specifically states: 'Interest shall not be allowed in any judgment on so much of such amount as had been deposited in said court.' Upon application to the court by the person claiming to be entitled to the sum deposited, the court may order the sum or any part of it to be paid to him. . . . The fair intent of §§ . . . [13a-73 (b)] and 48-11, when read together, is that the landowner is not entitled to interest on any sum of money which has been deposited with the court and is available to him. The deposit has the effect of a tender and stops the running of interest on the amount available."

The procedure outlined is constitutionally sound because it provides for the determining of just com-

pensation, either by the initial assessment or by application to the court, within six months, for a reassessment. Thus, upon the filing of the assessment, the state becomes vested with title in fee simple, unless a lesser estate is specified. Here, the title taken was in fee. After the certificate was filed with the clerk, the defendant became entitled to claim the award of $14,000 and was obliged to yield possession to the condemnor. *Salgreen Realty Co.* v. *Ives*, supra, 214. She did not become a tenant at will, as claimed by her counsel. One who continues to occupy premises, where no agreement, express or implied, exists for such continued occupancy, becomes a tenant at sufferance because, while he came into possession rightfully, he continued in possession wrongfully after his right terminated. *Welk* v. *Bidwell*, 136 Conn. 603, 608. Where there is no agreement on the terms of continued occupancy, the obligation arising from such occupancy is one for the reasonable value thereof. *Redevelopment Agency* v. *Norwalk Aluminum Foundry Corporation*, 155 Conn. 397, 404; *DiCostanzo* v. *Tripodi*, 137 Conn. 513, 515. The stipulation fixes that value at $280 for four months' occupancy. The judgment for the plaintiff was correct.

We are somewhat perplexed at the inclusion in the stipulated finding of paragraphs 10 and 11, which appear to be irrelevant to the issues presented by the pleadings. It appears from these paragraphs that at a hearing before the Superior Court on December 4, 1964, the court approved an additional payment of $1100, so that the total amount paid to the defendant by order of court was $15,100. No claim is made as to interest on the additional amount. If there had been a reassessment before a state referee and a finding of damages in a greater sum than the original assessment, the defendant would have been entitled to interest on

the increase from the date of taking to the date of payment. *Redevelopment Agency* v. *Norwalk Aluminum Foundry Corporation,* supra, 401; *Salgreen Realty Co.* v. *Ives,* supra, 215. The defendant has nowhere made such claim, and therefore there is nothing before us for decision. On the record before us, the increased award may have come about as a result of settlement in a pending reassessment proceeding, in which case the amount paid would include all claims and would be final without interest which would follow if the decision was by judgment.

There is no error.

In this opinion JACOBS and KINMONTH, Js., concurred.