[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has brought this action against the defendant seeking damages for the breach of a commercial lease. The defendant has asserted eight special defenses.
The central issue in this case is whether the defendant occupied the premises under a month-to-month tenancy or whether there was a valid written lease which existed binding the defendant for a term to expire on August 14, 1994. The court finds that there is no written lease and that the tenancy was a month-to-month one. In a month-to-month tenancy the tenancy for each month is one separate from that of every other month. Welk v. Bidwell, 136 Conn. 603,607.
The court finds the following facts. Louis Proto operated the Colonial Floor Covering retail store at 470 Monroe Turnpike, Monroe. At the time he first took possession of the premises the owner of the property was Arizona Lipnob Estates, Inc. In May 1989 the plaintiff, as Trustee, entered into an exchange agreement with the owner which made certain representations in anticipation of a sale of the property. Subsequently, on March 23, 1990 a closing was conducted in escrow. The corporation, by Herman Lipsitz, its President, assigned to the plaintiff its interest in the lease of "Louis Proto, under a month to month tenancy, with no security deposit, until delivery of the fully executed written lease dated August 25, 1989, and then under the written lease, with no security deposit yet posted under the lease." Exhibit A. On April 2, 1990 a warranty deed was recorded in the land records together with a construction mortgage deed, Exhibit 4, and a Collateral Assignment of Leases and Rentals. Exhibit 5. Schedule B of the latter document, executed by the plaintiff, lists "Louis Proto, as tenant under a month to month tenancy" among the leases which Salce assigned to Lafayette Bank and Trust Company.
An original lease, Exhibit C, and a copy, Exhibit 1, were admitted into evidence and the claims of the parties rest on their respective copies. Plaintiff's Exhibit C bears the alleged signature of Mr. Lipsitz. However, it was not identified as his by any witness. It was neither witnessed nor acknowledged. The defendant claims that he never received a fully executed copy of that lease with the signature of Mr. Lipsitz and further pointed out that the copy attached to the complaint does not bear this signature. This raises the issue as to why a copy of Exhibit C was not so attached if the plaintiff had the fully executed copy all along.
In addition to this conundrum is the question as to why Lipsitz, who signed the Assignment of Leases, (Exhibit A) the CT Page 6912 Exchange Agreement, (Exhibit B) and the Warranty Deed, (Exhibit 3) as President of the corporate landlord, signed Exhibit C in his individual capacity rather than in his representative capacity. The name of the Owner or Landlord was not completed in the beginning of the lease and does not appear on either document.
Further, with regard to the execution and delivery of the lease, the evidence showed that in the summer of 1989 the parties to this action were engaged in lease negotiations. On July 21, 1989 plaintiff's attorney sent the defendant "2 counterparts of the proposed lease" instructing him to execute and return it if satisfactory, whereupon counsel would return a fully executed original for the defendant's records. On August 22, the plaintiff's counsel wrote to George Ganim, Sr. defendant's counsel and enclosed a revised lease. Among the revisions was the inclusion of the last two sentences of paragraph 18 of the Rider. These concern the repair or replacement of the roof-top air conditioning unit by the plaintiff. On August 25, the defendant's then attorney, George Ganim, Sr. returned the leases executed by Mr. Proto and requested the return of a fully signed copy. However, he had no recollection of having received a fully executed lease and does not have one in his files. He believed that the lease was between Mr. Salce and Mr. Proto and had never heard Mr. Lipsitz' name. He anticipated that the space for the landlord's name would be completed with Mr. Salce's name or the corporate name he chose.
Meanwhile, Mr. Salce instructed his property manager, Jay Malemphy, to mail a fully executed copy to Attorney Ganim. Mr. Malemphy indicated that there was no transmittal letter in his files and that he probably wrote a note by hand. There is no letter from Attorney Sobel evidencing the delivery of the fully executed lease. The court finds that neither the defendant nor his attorney received the lease.
Regardless of the August 25 lease, the defendant sent rent to Monroe Plaza and not to Mr. Salce from August 1989 to April 1990. He paid Monroe Plaza varying amounts rather than $3120 per month. By May 1, 1990 he was in arrears in the sum of $8959. Exhibit 10.
In May 1990, Jay Malemphy sent Mr. Proto a letter informing the defendant that monthly payments would be $3520.15 including base rent and 6.25% of operating costs. No mention was made of a lease in that letter. On June 29, Mr. Malemphy wrote to the defendant again modifying the monthly pro-rata share to $3483.43. There was no mention of a lease. On July 24, 1990, Mr. Malemphy again increased the monthly charge by 4.4% to $3620.71 "in accordance with paragraph 1 of the attached rider to the lease agreement." He also advised Mr. Proto that "you do not have a `gross lease". . . . ."
Mr. Proto did not question the reference to a lease agreement CT Page 6913 but failed to pay the amounts specified. Mr. Malemphy did not write him again until January 14, 1991. He conceded that he did not pursue the matter "aggressively" nor take legal action.
The plaintiff argues that the lease as evidenced by Exhibit C is a valid contract through which he is entitled to obtain damages for breach. Section 52-550 of the General Statutes provides that contracts pertaining to an interest in land that are not to be performed within one year of the execution of the contract are to be in writing and signed by the party to be charged.
The burden of proving that a contract is outside the statute of frauds falls upon the plaintiff. Tait and La Plante's Handbook of Connecticut Evidence, section 4.5.8(b) 2nd ed. 1988.
"A definite contract of lease, besides the names of the parties, contains a description of the property let, the term of the lease and the amount of the rent." Handy v. Barclay, 98 Conn. 290, 296. The lease here lacks an essential term, namely the name of the lessor. The other memoranda furnish evidence that the terms of the lease were not in force when the lease was to have commenced. While the lease states that the "term of this demise shall be for five years beginning August 15, 1989 and ending August 14, 1994," the lease is dated August 25, 1989. In fact, the landlord's writing countermands the term of the lease by calling it a month-to-month tenancy. .
The plaintiff argues that part performance can remove a contract from the purview of the statute of frauds. He claims that his replacement of the HVAC unit constituted part performance. However, that is not solely explained by the lease. Mr. Salce proposed to give the shopping center a "face-lift", installing a canopy and changing the signage. He knew he had to either repair or replace the unit. The unit was not Mr. Proto's to remove. It was a capital improvement that would remain with the premises and benefit the property and subsequent tenants. As to the defendant, his payments of some correct rental amounts do not constitute compliance with the written lease terms. He knew he had an obligation to pay rent as a month-to-month tenant. He is not estopped to deny the existence of the lease because of rent payments. The acts of part performance are not sufficient to remove the contract from the operation of the statute of frauds.
For these reasons, the Court finds judgment for the defendant. It is unnecessary to address the defendant's remaining special defenses or claims or the plaintiff's claims as the foregoing is dispositive of the matter.
LEHENY, J. CT Page 6914