[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a summary process action. The plaintiffs entered into a one year lease with the defendants, FULL commencing August 1, 1993. The written lease was extended another year at the same rent, which was $1400 per month, payable in two installments on the first and the fifteenth of the month. By agreement of the parties, the written lease was extended for a third year, from August 1, 1995, to July 31, 1996; this time the rent was increased to $1500 per month, in two equal installments of $750 each.
Toward the end of the term of the final extension the parties negotiated toward a purchase of the premises by the defendants, but the sale was never finalized. The defendants incurred a plumbing bill in the amount of $711.53 in May, and, apparently following a precedent, asked the plaintiffs to pay two thirds of the amount. The plaintiffs wanted time to discuss the bill with the plumber, but never made a real effort to follow up with him and never did pay any part of the bill. Meanwhile, all payments of rent due under the lease were paid until July 31, 1996, the expiration date of the written lease. In 1993 when the parties entered into the rental agreement, the defendants provided $2,800 for the first and last month's rent and a security deposit of $2,000.
The written lease included a holdover clause, which provided that in the event the tenant stayed beyond the time provided for the in the lease with the consent of the landlord, the lease would be extended on a month to month basis and all other terms of the lease would be in effect. In the event of a holdover, the lease could be canceled with notice at any time.
In July, 1996, the written lease was not extended. By letter dated July 30, 1996, the defendants indicated that they were still interested in negotiating for the purchase of the house. They enclosed a check in the amount of $281, which reflected the $750 due on the first of the month less two thirds of the plumbing bill. On August 9, 1996, the plaintiffs sent to the defendants a letter, which made a final demand as to the purchase of the premises and indicated that if the demand was not accepted CT Page 7576 by August 19, the rental agreement would be canceled and the defendants were to vacate by October 12, 1996. In the same letter, the plaintiffs stated that the rent was increased to $2,000 per month, effective in September. The letter stated that the $1400 which had been paid in 1993 for the last month's rent would be applied to the September rent.
The defendants responded on August 17, 1996. They made a final offer for the premises, which offer apparently was not accepted. They also stated that "no additional lease payments will be forthcoming" until a credit reference was received from the plaintiffs, and the payment which was due on August 15, 1996, was not made. No further payments were made by the defendants. The defendants never agreed to the plaintiff's statement that the rent would be $2,000 beginning in September.
The plaintiffs served a notice to quit on September 14, 1996; the notice to quit stated nonpayment of rent as the reason for eviction. When the defendants remained beyond the quit date, the plaintiffs filed the summons and complaint, which alleges nonpayment for the months of August and September. The summons and complaint were served on October 4, 1996.
There is no significant dispute as to the above referenced facts.[1] Several conclusions are reached simply. First, both by the terms of the lease and the operation of law; see §47a-3d of the General Statutes; the tenancy became a month to month tenancy as of August 1, 1996. As all the other terms were to remain in effect, the rent for August was, at least prior to any offset or deduction, $1500 payable in two equal installments on the first and the fifteenth of the month. It is also clear that there was no meeting of the minds as to the September rent there is no action available to the plaintiffs for "nonpayment of rent" as to September. See Welk v. Bidwell, 136 Conn. 603
(1950). Were the action brought only for nonpayment of rent for September, the plaintiffs could not prevail
There was, however, "rent" due in August, as noted above. It is not disputed that only $281.00 was paid in August; if credit is given for the plumbing bill, the defendants still are short for the $750.00 due on August 15. At the time, the defendants stated that they were not paying the rent due on the fifteenth because they first required a favorable credit reference. In their brief, they quite wisely have abandoned this justification, and now claim that the $1400 for "the last month's rent" ought to CT Page 7577 be applied to the month of August. If that amount were to be applied to the month of August, then the total amount of rent would be paid and, because the wrong reasons have been stated for nonpayment for the month of September, the defendants would prevail.
Neither side has presented authority precisely on point, and I have found none bearing exactly on the issue: when a "deposit" is made in advance for the last month's rent, can an eviction for nonpayment be avoided by applying the deposit for the month which turns out to be the last month of the "rent", where it was not necessarily clear at the time that it was the last month. In the peculiar circumstances of this case, I believe that the deposit should be so credited. At the time, the rental agreement was an oral month to month agreement in the amount of $1400 per month. By unilaterally attempting to raise the rent to $2,000, the plaintiffs ran the risk that the proposal would not be accepted and, therefore, ensuring that the month in which the offer was made would be the last month of the rental agreement; there is, then, no unfairness in applying the deposit in this manner.
Judgment may enter for the defendants.
Beach, J.