[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this action alleges that the defendant orally agreed to convey to him a one-half interest in a condominium unit which she owns known as 380 Hitchcock Road, Unit 64, Waterbury (the Property), upon his payment to her of $75,000, one half of the purchase price of the Property. He brings this action seeking specific performance or, in the alternative, damages by way of restitution. The defendant denies the existence of the agreement alleged by the plaintiff and filed several special defenses, including one raising the statute of frauds. She also has filed a counterclaim seeking a restraining order against harassment by the plaintiff and money damages for intentional infliction of emotional distress and for use and occupancy.
Certain facts are not disputed by the parties. The plaintiff and the defendant were engaged in a romantic and sexual relationship for approximately twelve years from the fall of 1981 until February 1, 1994, but they never married. In June, 1987, they moved to the Property, which was purchased for $150,000. The plaintiff paid the $15,000 deposit for the Property. The defendant paid the $135,000 balance of the purchase price from the proceeds of the sale of her single family home. The defendant was and is the sole record owner of the Property. The relationship between the parties ended on February 1, 1994 at the defendant's insistence.
The threshold factual issue in this case is whether the parties made the agreement alleged by the plaintiff. The plaintiff testified that when the parties were looking for a condominium to purchase, they agreed to share the cost equally if they could afford to. However, at the time they purchased the Property, the plaintiff could only afford to pay the $15,000 CT Page 2081 deposit and the defendant paid the balance of the $150,000 price. They therefore agreed, he testified, that at such point as he had paid the defendant an additional $60,000, the defendant would convey to the plaintiff a one-half interest in the Property. The plaintiff further testified that the parties agreed that he would receive "credit" toward the $60,000 for purchases he made for the plaintiff and for the Property, including a car, moving expenses, new furniture and other items. He testified that each time he wrote a check for which he wanted "credit" against the $60,000, he showed the check or check register to the defendant, she would affirm the expenditure and he would mark each such check on the memo line with a "C" with a circle around it, the "C" standing for the condominium debt. On cross-examination, the plaintiff specifically denied that he wrote the "C" on the checks after this lawsuit was initiated. He insisted that he marked the checks with the "C" at the time he wrote the checks. Many of the original checks or photocopies of them were admitted at trial, virtually all of them marked with the "C" as described by the plaintiff.
The defendant, however, issued a subpoena for the plaintiff's checking account records, in response to which Naugatuck Savings Bank produced copies of fifteen checks from the bank's microfilm records. None of the Bank's copies of the fifteen checks contained the "C" despite the fact that the corresponding originals or copies of the checks which were put in evidence by the plaintiff were marked with the "C". Clearly, the plaintiff lied under oath; he placed the "C" on the checks at some time after the checks cleared the Bank and not simultaneously with writing the checks, as he testified. The fact that the plaintiff deliberately testified falsely about such a material part of his claim causes the court to disbelieve all of his testimony. As a result, there was no credible evidence supporting the plaintiff's allegations that the defendant agreed to convey to him a one-half interest in the Property upon his payment of $60,000. Judgment is entered for the defendant on the plaintiff's complaint.
In the first count of her counterclaim, the defendant alleges that the plaintiff threatened her with physical harm on several occasions, once two months before their relationship ended and then several times in January and February, 1994, just after they separated. As relief, the defendant seeks a restraining order stopping the threats and barring the plaintiff from coming to the Property. The evidence at trial, however, CT Page 2082 was that the plaintiff had not made any threats nor attempted to come to the Property in over two years prior to trial. Under General Statutes § 46b-15, an applicant for a restraining order must show a continuous threat of present physical pain or injury. To issue a restraining order under the court's common law authority, there must be a showing of imminent harm. Neither showing was made at trial. Judgment is therefore entered for the plaintiff on the first count of the defendant's counterclaim.
In the second count of her counterclaim the defendant seeks damages for intentional infliction of emotional distress arising out of three incidents, two of which occurred in January, 1994 and one in November, 1993. Four elements must be proven to sustain a claim of intentional infliction of emotional distress: (1) the actor intended to inflict emotional distress; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was a cause of the emotional distress; and (4) the emotional distress sustained by the plaintiff was severe. Petyan v.Ellis, 200 Conn. 243, 253 (1986); DeLaurentis v. New Haven,220 Conn. 225, 266-7 (1991). In determining whether the conduct is extreme or outrageous, the court must be mindful that conduct which is insulting or displays bad manners or results in hurt feelings is insufficient. Mellaly v. Eastman Kodak Co.,42 Conn. Sup. 17, 19 (1991). The defendants must be found to have engaged in conduct which exceeds all bounds tolerated by society. Petyan v. Ellis, supra, 200 Conn. 254 n. 5. It is the intent to cause injury which is the gravamen of the tort.DeLaurentis v. New Haven, supra, 220 Conn. 267.
The defendant testified that in November, 1993, after the parties had an argument, the plaintiff threw his shoe at her and stated that if he had a gun, he would use it on her. She also testified that in January, 1994, when the parties were at a bar and after the plaintiff had been drinking, the plaintiff said that he could pay someone to "take care of" her. In the third incident, on January 31, 1994, the plaintiff threw a box against the wall and punched the front door of the Property.
The court credits the defendant's testimony with respect to the occurrence of these incidents. However, the evidence was not sufficient to establish that the plaintiff took these actions intending to inflict emotional distress on the defendant, a necessary element of the tort. Therefore, judgment is entered for the plaintiff on the second count of the counterclaim. CT Page 2083
The defendant's third claim against the plaintiff is for use and occupancy of the Property for the seven years the plaintiff lived there at the rate of $500 per month. Use and occupancy is payable by a tenant in possession when the tenant is a tenant at sufferance. Sippin v. Ellam, 24 Conn. App. 385,391 (1991). A tenant at sufferance is a tenant who initially comes into possession rightfully, but then wrongfully remains in possession after his or her right of possession has terminated.Welk v. Bidwell, 136 Conn. 603, 608-609 (1950).
The defendant testified at trial that the plaintiff moved into the Property with her agreement, agreeing to pay her $500 per month as rent. He never paid any rent. On February 1, 1994, when the defendant asked the plaintiff to move out, the plaintiff did so. On these facts, the defendant cannot recover for use and occupancy because the plaintiff never became a tenant at sufferance. He did not remain in possession wrongfully after his right of possession terminated. Judgment is entered for the plaintiff on the third count of the defendant's counterclaim.
VERTEFEUILLE, J.