[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff was, on April 15, 1997, a commercial tenant in premises leased from the defendant Park Industrial Development, Inc.[1]
("landlord"). The defendant Auto-Lock Unlimited, Inc. ("Auto-Lock") was a co-tenant in the same building. The plaintiff has brought a negligence action against the two sets of defendants for damages incurred as a result of a fire which allegedly caused significant property damage to the plaintiff
The complaint alleges, essentially, the following scenario. On the day before the fire, the co-tenant Auto-Lock discovered burn marks in its premises; the complaint alleges that these marks were the handiwork of an unknown arsonist. Employees of Auto-Lock reported the suspicious activity to the landlord and to the local police department, but not to the plaintiff The subsequent fire, set by an arsonist, destroyed a significant amount of property and caused business interruption. The complaint alleges in count one that the landlord was negligent in failing to inform the plaintiff of the first "botched arson attempt", in failing to properly safeguard the premises, in failing to install and maintain outdoor security lighting, in failing to provide adequate security, and in failing to request an increased police presence after the first attempt. The second count claims that the co-tenant Auto-Lock was negligent in not informing the plaintiff of the first attempt, in failing to "post adequate security", in failing to secure their own premises, in negligent storage of motor vehicles at their leased premises, and in not remedying conditions they were aware of CT Page 14077
Both defendants have moved for summary judgment. The defendant Auto-Lock urges as grounds for summary judgment that it had no duty to the plaintiff as a matter of law and that an intervening cause, the arsonist, severed any causal chain between any negligence on its part and the damage. The defendant landlord argues that a clause in the lease which had been in effect between the parties forecloses any obligation to pay damages as a result of fire.
Summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Section 17-49 of the Practice Book. A material fact is one which will make a difference in the result. Barrett v. SouthernConnecticut Gas Company, 172 Conn. 362, 378 (1977). The movant has the burden of showing the absence of a genuine issue, and the evidence is to be viewed in the light most favorable to the nonmoving party. Hammer v.Lumberman's Mutual Casualty Company, 214 Conn. 573, 578 (1990). If the moving party successfully sustains its burden, the opposing party has the burden of presenting evidence to show that there is a genuine issue. It is not enough to state in conclusory fashion that an issue exists. Dailyv. New Britain Machine Company, 200 Conn. 562, 568 (1986). The motion should be granted if a verdict would be directed on the same evidence.Batick v. Seymour, 186 Conn. 632, 647 (1984).
The uncontroverted evidence as to Auto-Lock's motion, presented in the form of admitted pleadings, affidavits, and copies of pages of deposition transcripts, is as follows. Both the plaintiff and Auto-Lock were at the time of loss tenants in an industrial building owned by Park Industrial. At least part of Auto-Lock's business was the storage of cars which had been repossessed. On or about April 15, 1997, its employees discovered soot marks in the vicinity of one of the overhead doors. They apparently did not know the cause of the marks, that is, the cause could have been accident and could have been arson. They did not know who was responsible for the minor damage. They reported the incident, in any event, to the landlord and to the East Hartford Police Department. Auto-Lock did not notify Ryan Transportation, the plaintiff; nor did Auto-Lock take any unusual precautions following the incident.
The next night someone set a fire causing substantial damage to much of the premises, including the plaintiff's property. The plaintiff claims in its affidavit that it had no knowledge of the first incident and, had it known of the first incident, it would have taken measures to protect itself against the serious fire, which was the result of arson. None of the parties has any knowledge of who the arsonist was. Although the second incident is not necessarily related to the first, I will draw the inference in favor of the nonmoving party and assume that the first CT Page 14078 incident was arson and that it was perpetrated by the same person who committed the second arson. I will also assume for the purpose of this motion that the plaintiff actually would have done something to protect itself against the second arson, had it known of the first attempt.
On these facts, Auto-Lock argues that as a co-tenant it has no duty to protect the plaintiff against loss caused by a third party. The general black-letter rule is that "absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another." Fraser v. United States, 236 Conn. 625, 632 (1996). Fraser
involved a different factual situation than the one in issue here: the issue was whether a psychotherapist had a duty to prevent an outpatient from attacking a third party. Our Supreme Court held that there was no duty where the third party was unidentifiable, even if the medical center had reason to know that the patient was psychopathic. A duty might arise if the relationship was a "special custodial relationship."
Although the facts are not precisely on point, there are lessons to be drawn from Fraser. First, our Supreme Court is willing to draw fine distinctions regarding the existence of duty as a matter of law. Second, the relevant sections of the Restatement were cited with approval. It seems nearly certain, then, that the Supreme Court would approve the use of the Restatement to be applied to the facts of this case.
Section 315 of the Restatement[2] states that:
 There is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless
 (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
 (B) a special relation exists between the actor and the other which gives to the other a right to protection.
The types of relations which impose a duty because of the relation between the actor and the third person include that of parent, employer, and landowner. 2 Restatement (Second), Torts §§ 316-19. This relation suggests a special ability to control the actions of the actual wrongdoer. The types of relations which impose a duty because of the relation to the victim include common carrier, innkeeper, police and prisons. Id., §§ 314[3], 314A. In this instance, the victim is, to some degree, within the custody or control of the actor such that the CT Page 14079 actor has a special responsibility to protect the victim from harm. Thus the scheme of the Restatement is such that duty extends to protect persons from the actions of third persons only when there is some nexus of custody or control over either the active wrongdoer or the actual victim.
Here, there is no such nexus. It is agreed that there is no evidence suggesting that any of the "special relations" existed between Auto-Lock and the arsonist. The relation of tenant to tenant is also not specifically enumerated in the Restatement as a relation which imposes a duty. The plaintiff argues, however, that the list in the Restatement is not an exclusive list, and policy reasons support the extension of the duty to the tenant-tenant relation. For this proposition the plaintiff relies on Kargul v. Sandpiper Dunes Limited Partnership, 1991 WL 28051 (Axelrod, J.) (1991).
In Kargul the plaintiff apparently was sexually assaulted by the guest of the defendant. The defendant and the plaintiff were cotenants in a residential apartment building, and for the defendant knew that the assailant had a history of sexual assault. The plaintiff claimed that the defendant had a duty to warn her or otherwise take measures to protect her from the assailant. The defendant claimed that there was no such duty, and relied on sections of the Restatement previously cited herein.
In Kargul, Judge Axelrod first determined that the tenant-tenant relation was not one recognized by the Restatement to impose a duty. He noted that the comment to § 314A suggested that the Restatement did not state one way or the other whether additional relations might create a duty. He then analyzed the responsibility for security running fromlandlord to tenant, and suggested that the duty to protect third parties against criminal acts of another ought to be borne by the party "who has the effective capacity to perform these necessary acts (of providing security)." Id., p. 6. Because a tenant has the sole ability to control what happens in her own apartment, then the affirmative act of the tenant in, in effect, harboring a known sex offender can create a duty to protect other tenants, in some way, from conduct of the known offenders. Allowing the offender to reside with her created the opportunity for the criminal act.
If I were to follow the analysis of Kargul, I could find a duty if by an affirmative act, perhaps such as employing a known arsonist, Auto-Lock had created the opportunity for the arsonist to act. The rationale of the Restatement, as extended to a degree by Kargul, is that the exercise of some significant degree of control, over either the victim or the perpetrator, is essential to create a duty. In Kargul, there was an exercise of control, in a sense, by affirmatively allowing the CT Page 14080 perpetrator to live in the premises and thus have the opportunity of access. Here, there is no evidence of control over the arsonist in any way significant enough to create a duty. As opposed to a landlord, a tenant has no contractual relation with a co-tenant and, indeed, may have no substantial knowledge at all about co-tenants. Considerations expressed in the Restatement clearly foreclose the existence of a duty on the facts of this case.
Summary judgment is, then, granted in favor of the defendant Auto-Lock.[4]
The defendant landlord has also moved for summary judgment. It claims that the terms of a written lease foreclose liability. The facts underlying this argument are as follows.
The landlord and the plaintiff entered into a written lease in 1994. The lease provided for monthly payments of rent. In condition Four of the lease, the parties agreed that the landlord "shall not be liable for any injury or damage to persons or property resulting from fire, explosion . . . nor shall Landlord . . . be liable for any such damage caused by other tenants or persons in said building or in the parking lot or public areas." By its terms, the lease expired on December 31, 1994. The plaintiff continued to occupy the demised premises. At a deposition, a representative of the plaintiff said that the business just stayed there and continued to pay rent, and when asked if anything had changed, answered, "No". The landlord claims that as a matter of law the holdover tenancy thus created included the terms of the written lease previously in effect.
The landlord relies on Welk v. Bidwell, 136 Conn. 603 (1950). In Welk, a leasing agreement expired and the parties did not agree on the rent for the holdover period. In this situation, there then was no leasing agreement and the tenancy was, in effect, a tenancy at sufferance and there was no "rent" fixed. The Supreme Court mentioned in passing that in some factual situations the conduct of the parties could create a contract by implication id., 607; but that there was no such contract in the case under consideration.
The plaintiff suggests that § 47a-3d of the General Statutes provides that holding over is not in itself evidence of any agreement for a further lease, and that Bushnell Plaza Development Corporation v.Fazzano, 38 Conn. Sup. 683 (1983), holds that any change in conduct, evincing a change in terms after termination of the written lease, may create a new contract.
It is clear that the precise nature of the agreement in effect, if CT Page 14081 any, after the expiration of the written lease depends on the circumstances, the conduct and the actions of the parties.[5] The materials which have been submitted by the parties suggest that there are factual disputes in this regard. As in Monarch Accounting Supplies v.Stirachtis, 1996 WL 493232 (Thim, J.) (1996), the issue is best left to a factual resolution.
The landlord's motion for summary judgment is denied.[6]
 ______________________, J. Beach