## NANCY M. CREATURA *v.* LEONARD G. CREATURA (AC 30906)

Gruendel, Harper and Peters, Js.

---

Argued March 9—officially released June 22, 2010

*Jeffrey D. Ginzberg*, for the appellant (defendant).

*Margarita Hartley Moore*, for the appellee (plaintiff).

GRUENDEL, J. The defendant, Leonard G. Creatura, appeals from the judgment of the trial court granting the postjudgment motion for contempt filed by the plaintiff, Nancy M. Creatura. The defendant claims that the court improperly (1) concluded that a provision of the parties' separation agreement pertaining to college expenses was unambiguous and (2) ordered him to pay an arrearage of approximately $12,000 within two months. We affirm the judgment of the trial court.

The record discloses the following undisputed facts. The parties married in 1988, and three children were born of the marriage. Following the subsequent breakdown of their marriage, the parties voluntarily entered into a comprehensive separation agreement that the court incorporated into its judgment of dissolution. On May 17, 2002, the court dissolved their marriage, finding that it had broken down irretrievably without attributing fault to either party as to the cause.

Pertinent to the defendant's appeal are the following provisions of the separation agreement. Paragraph two of article II B provides: "The parents shall divide the cost of all educational expense for the children which may include private primary, middle and high school, with the [defendant] paying 50 [percent] and the [plaintiff] contributing 50 [percent]. The costs shall include tuition, uniforms, books and equipment for sports activities and extra curricular activities." Paragraph three of article II B provides: "The parents shall divide the cost of all educational expense for the children which may include secondary education such as private or public college with the [defendant] paying 50 [percent] and the [plaintiff] contributing 50 [percent]. The costs shall include tuition, room and board, books and equipment for sports activities, transportation and extra curricular activities, such cost being based on the cost of

attending the University of Connecticut at Storrs, after scholarships, financial aid and grants are considered. This would be conditioned upon and provided that the children complete their education by the age of twenty-two (21) years."

In the late summer of 2008, the parties' eldest child, Gina, commenced her collegiate studies at the University of Rhode Island. Due to alleged financial difficulties, she terminated those studies after one semester.

On August 14, 2008, the plaintiff filed a postjudgment motion for contempt in which she alleged that the defendant had failed to comply with certain obligations, including paying his share of educational expenses, set forth in the separation agreement despite repeated demands for payment. On September 12, 2008, the defendant filed a postjudgment motion to modify child support. In that motion, the defendant alleged that his "obligation to pay for college [expenses] is inherently unworkable and unenforceable due to [his] financial circumstances . . . ." A two day hearing followed, at which evidence was introduced and both parties testified. On March 9, 2009, the court entered its postjudgment orders. The court first addressed the defendant's motion for modification, stating that "[t]he parties agreed that the defendant shall pay child support in the amount of $245 per week. The court will adopt the agreement of the parties and make it an order of the court. With respect to unreimbursed medical expenses for the minor children, the parties shall each be responsible for 50 percent of these expenses."[1] The court then

---

[1] The record before us contains no explicit ruling by the court on the defendant's request to modify his obligation "to pay 50 percent of the cost of college expenses . . . ." To the extent that it could be argued that the court's modification order did not encompass that specific request, we note that the defendant has not sought an articulation; see Practice Book § 66-5; or raised any claim regarding that request in this appeal.

ruled in favor of the plaintiff on her motion for contempt, finding that "the defendant was aware of his obligation, and he never, prior to the filing of the plaintiff's contempt motion, filed opposition as to the dissolution agreement being ambiguous. The court finds that the defendant wilfully failed to comply with court orders as follows: (1) failed to pay his share of the college expenses, which [are] comprised of $4655 for tuition plus $223 for books for a total of $4878, (2) failed to pay his share of the unreimbursed medical expenses in the amount of $352 and (3) failed to pay extracurricular expenses for the minor children in the amount of $749 for a total of $5979. Further, the court orders the defendant to pay attorney's fees in the amount of $6780 to the plaintiff's attorney.[2] Thus, the total the defendant is ordered to pay with respect to this contempt is $12,759 minus a credit of $627 for child support paid, leaving a balance of $12,132. The defendant is ordered to pay $4044 on or before March 27, 2009, $4044 on or before April 17, 2009, and $4044 on or before May 15, 2009. . . . If the defendant does not make payment in accordance with this order, he may face incarceration." From that judgment, the defendant appeals.

I

The defendant first claims that the court improperly concluded that the provision of the parties' separation agreement pertaining to college expenses was unambiguous. We are not persuaded.

"Our interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. . . . A contract must be construed to effectuate

---

[2] Article 21 of the separation agreement provides: "The party breaching the terms of this agreement shall be responsible for all costs and attorney's fees incurred to enforce the terms and provisions of this agreement."

the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Citation omitted; internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008).

Because a determination as to whether a contract is ambiguous is a question of law, our review is plenary. *Electric Cable Compounds, Inc.* v. *Seymour*, 95 Conn. App. 523, 529, 897 A.2d 146 (2006). "A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.)

*Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC,* 273 Conn. 724, 735, 873 A.2d 898 (2005).

As with any issue of contract interpretation, we look first to the language of the separation agreement concerning college expenses. Paragraph three of article II B provides: "The parents shall divide the cost of all educational expense for the children which may include secondary education such as private or public college with the [defendant] paying 50 [percent] and the [plaintiff] contributing 50 [percent]. The costs shall include tuition, room and board, books and equipment for sports activities, transportation and extra curricular activities, such cost being based on the cost of attending the University of Connecticut at Storrs, after scholarships, financial aid and grants are considered. This would be conditioned upon and provided that the children complete their education by the age of twenty-two (21) years."[3] On appeal, the defendant contends that the paragraph is ambiguous. We disagree.

As the defendant properly notes in his appellate brief, the question before us is whether the language at issue is susceptible to more than one reasonable interpretation, rather than merely a conceivable one. See, e.g., *Isham* v. *Isham,* 292 Conn. 170, 181, 972 A.2d 228 (2009) ("proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation"); *Poole* v. *Waterbury,* 266 Conn. 68, 88, 831 A.2d 211 (2003) (contract ambiguous if language of contract is susceptible to more than one reasonable interpretation). We disagree with the defendant that paragraph three of article II B is capable of two reasonable interpretations.

---

[3] There is no dispute that the separation agreement contains a typographical error in the final sentence of paragraph three of article II B regarding a particular age. That typographical error has no bearing on the present case, as Gina was eighteen years old when the college expenses at issue accrued.

A plain reading of the paragraph, according the language its common, natural, and ordinary meaning and usage, is that it obligates the defendant to pay 50 percent of his children's college expenses, but only until they reach a specified age. The plain language of that paragraph does not state that the parties are not liable to make payments for college expenses until after the child graduates. The defendant nevertheless interprets the final sentence of paragraph three to provide that his liability to contribute to his children's college expenses does not attach until, and only if, the children graduate from college by a certain age. In our view, that tortured interpretation is not a reasonable one.

The separation agreement entered into by the parties contains detailed provisions on a variety of subjects, including the education of their children. Paragraph two of article II B obligates the parties to each pay 50 percent of "all educational expense for the children" arising from "primary, middle and high school . . . ." That obligation includes the cost of "tuition, uniforms, books and equipment for sports activities and extra curricular activities." Likewise, paragraph three of article II B extends that obligation to the children's collegiate studies. In both paragraphs, the parties are to share equally the cost of educating their children. Those provisions reflect the parties' appreciation of "the vital role of education in our society." *Kadrmas* v. *Dickinson Public Schools*, 487 U.S. 450, 469, 108 S. Ct. 2481, 101 L. Ed. 2d 399 (1988) (Marshall, J., dissenting). As the United States Supreme Court observed, "[w]e have repeatedly acknowledged the overriding importance of preparing students for work and citizenship, describing education as pivotal to sustaining our political and cultural heritage with a fundamental role in maintaining the fabric of society. . . . [E]ducation . . . is the very foundation of good citizenship." (Citation omitted; internal quotation marks omitted.) *Grutter* v. *Bollinger*,

539 U.S. 306, 331, 123 S. Ct. 2325, 106 L. Ed. 2d 304 (2003); see also *Selective Service System* v. *Minnesota Public Interest Research Group*, 468 U.S. 841, 879 n.22, 104 S. Ct. 3348, 82 L. Ed. 2d 632 (1984) ("[p]ost-secondary education is the necessary prerequisite to pursuit of countless vocations, both professional and technical"); *Wisconsin* v. *Yoder*, 406 U.S. 205, 221, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972) ("some degree of education is necessary to prepare citizens to participate effectively and intelligently in our open political system if we are to preserve freedom and independence"); *Brown* v. *Board of Education*, 347 U.S. 483, 493, 74 S. Ct. 686, 98 L. Ed. 873 (1954) ("it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education").

That plain expression of the parties' intent notwithstanding, the defendant argues that the final sentence of paragraph three conditions his duty to contribute to his children's college expenses on their timely graduation. Unless and until that time arises, he contends that he has no obligation to contribute anything to their collegiate education.[4] That interpretation is absurd. It is axiomatic that "[w]hen interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 232, 951 A.2d 1249 (2008). The defendant's interpretation of the final sentence of paragraph three runs

---

[4] Under the defendant's interpretation of paragraph three, he would not be liable to contribute anything in the event that his child attended four years of college but did not graduate or in the event that his child graduated at the age of twenty-three. Indeed, we can envision myriad scenarios, such as the deferral or interruption of collegiate studies due to a medical condition or military service, in which a child may be unable to graduate before the age specified in paragraph three.

afoul of the mandate that "[t]he individual clauses of a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part." *Levine* v. *Advest, Inc.*, 244 Conn. 732, 753, 714 A.2d 649 (1998). Reading the agreement as a whole and according the language of paragraph three its common, natural, and ordinary meaning and usage, we conclude that the defendant's interpretation that his duty to contribute to his children's college expenses attaches only upon their timely graduation is not reasonable. Because paragraph three of article II B is not capable of two reasonable interpretations, the court properly determined that it is unambiguous.

Even if we were to conclude that paragraph three contained an ambiguity, the defendant still could not prevail. "Extrinsic evidence is always admissible . . . to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact." (Citations omitted; internal quotation marks omitted.) *Isham* v. *Isham*, supra, 292 Conn. 180–81. In the present case, such extrinsic evidence was before the trial court. The defendant testified under oath at the March 6, 2009 proceeding that, at the time of the dissolution of his marriage to the plaintiff and with the assistance of legal counsel, he carefully reviewed and signed the separation agreement. The defendant acknowledged that the agreement contained a "detailed treatment" of "issues that arose out of the marriage" that the parties were attempting to resolve. The defendant testified that, with respect to the college expenses of their children, the parties intended to contribute equally, with each paying 50 percent. On that issue, the court inquired: "So, now what do you say? Now you are saying you didn't understand the agreement, it was uncertain, you didn't know

what you were doing; you would say that?" The defendant answered in the negative. In ruling orally, the court credited that testimony, stating that "the defendant testified that he was aware of the agreement, he signed it, he was represented by counsel at the time and that he understood that he was responsible for sharing expenses, which included college tuition."

Significantly, the defendant at trial never advanced the interpretation he now asserts in this appeal. He did not testify, on direct examination, cross-examination or in response to the questions of the court, that he understood his obligation to pay college expenses to be conditioned upon his children's graduation from college. Rather, he testified that he was refusing to make the required college expense payments because he was not consulted about Gina's choice of college.

It also is noteworthy that the defendant's postjudgment motion to modify child support presupposes a current obligation to pay Gina's college expenses.[5] Contrary to the interpretation of paragraph three of article II B advanced on appeal, the defendant in that motion averred that "[u]nder the child support order, the parties are required to divide the cost of the educational expenses of the children [fifty-fifty]. The cost include[s] tuition, room, board, books and equipment for sports activities, transportation and extracurricular activities . . . . The oldest child of the parties . . . is now attending college and the defendant does not have sufficient income to pay 50 [percent] of the college expenses nor does the defendant have sufficient assets to pay the college expenses. The obligation to pay for college is inherently unworkable and unenforceable due to the

---

[5] The defendant's September 12, 2008 postjudgment motion to modify child support was in response to the plaintiff's August 14, 2008 postjudgment motion for contempt for failure to comply with, inter alia, his educational expense obligations.

financial circumstances of the defendant." If the defendant's interpretation of paragraph three is correct and his obligation to contribute to college expenses was contingent on graduation from college by a certain age, he had little reason to move for modification of that obligation. Tellingly, the defendant did not advance that interpretation or claim that paragraph three was ambiguous in his postjudgment motion to modify.

In addition, the court was presented with evidence that, after Gina gained admission to the University of Rhode Island, the defendant attempted to give her twenty savings bonds, each in the amount of $100.[6] The defendant testified that he gave Gina the bonds to help with her college expenses. While not dispositive of the issue, that evidence supports an inference that the defendant understood his obligation to contribute toward college expenses to be a current one.

In ruling orally, the court found that the defendant understood his responsibility to pay the college expenses of his children. In so ruling, the court made limited factual findings and, although the court did not explicitly conclude that the parties intended to contribute equally to those college expenses as they accrued, rather than at some date years later in the event that the children actually graduated college, that determination is implicit in its decision. As Professor Corbin observed, "[n]o contract should ever be interpreted and enforced with a meaning that neither party gave it." J. Murray & T. Murray, 6 Corbin on Contracts (2009 Cum. Sup.) § 572B, p. 77. Neither party testified that paragraph three of article II B was intended to condition payment of college expenses on timely graduation. That the parties did not intend to so condition their obligation

---

[6] The savings bonds ultimately were returned to the defendant after a dispute arose as to who would pay the tax on the interest thereon.

emanates from the decision of the court. That determination is supported by the record before us and is not clearly erroneous.

## II

The defendant also claims that the court, as part of its contempt order, improperly required him to pay an arrearage of approximately $12,000 within two months. He maintains that the court erroneously found that he possessed the financial capacity to comply with that order.

The burden to prove financial incapacity in such instances rests with the contemnor. *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 397, 985 A.2d 319 (2009). "Whether the defendant established his inability to pay the order by credible evidence is a question of fact. Questions of fact are subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence . . . we give great deference to its findings." (Internal quotation marks omitted.) Id., 397–98.

The oral decision of the court lacks any factual findings regarding the defendant's financial capacity. It therefore was incumbent on the defendant to request an articulation of that issue, consistent with his burden to provide this court with an adequate record for review. That he failed to do. Under our rules of practice, it is the sole responsibility of the appellant to provide this court with an adequate record for review. Practice Book § 61-10. Practice Book § 66-5 permits an appellant to seek an articulation by the trial court of the factual and legal basis on which it rendered its decision. "[A]n

articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 283, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005). "[W]e will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). Accordingly, we must presume that the court properly found that the defendant possessed the financial capacity to comply with its order.

The record contains evidence to support that finding. Copies of the defendant's 2006 and 2007 federal income tax returns were introduced as exhibits, which indicated refunds of $9378 and $9107 respectively.[7] In addition, the defendant testified that he recently had cosigned a $17,000 loan for his current wife's vehicle. The court also heard testimony from the defendant that he had taken a vacation to Hawaii with his current wife in the past year. Finally, the defendant's March 5, 2009 financial affidavit indicated that the defendant had a 401 (k) account with an approximate value of $50,000. In light of that evidence, the determination that the defendant possessed the financial capacity to comply with the court's order was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] The defendant testified at the March 6, 2009 proceeding that he had yet to file his 2008 tax return.