## BREWSTER PARK, LLC v. FRED BERGER
(AC 30916)

DiPentima, C. J., and Bear and Stoughton, Js.

---

Argued October 29, 2010—officially released February 22, 2011

*Matthew G. Berger*, for the appellant (defendant).

*Andrew M. McPherson*, with whom, on the brief, was *William J. Kupinse, Jr.*, for the appellee (plaintiff).

*Opinion*

STOUGHTON, J. The defendant, Fred Berger, appeals from the judgment of the trial court awarding the plaintiff, Brewster Park, LLC, damages for use and occupancy of its premises by the defendant and attorney's fees. On appeal, he claims that (1) the plaintiff failed to plead a claim for use and occupancy in its complaint, (2) the court improperly awarded damages for use and occupancy pursuant to a lease agreement, and (3) attorney's fees were awarded improperly to the plaintiff.[1] We reverse the judgment of the trial court as to the award of attorney's fees and affirm the judgment in all other respects.

The following facts as found by the court and revealed in the record are relevant to our resolution of the defendant's appeal. The plaintiff was the owner of premises

---

[1] In his statement of the issues, the defendant also claimed that the court improperly failed to consolidate this case with *Brewster Park, LLC v. Hochman*, Superior Court, judicial district of Fairfield, Housing Session at Bridgeport, Docket No. FBT-CV-07-4021167-S. The defendant, however, has not briefed this issue on appeal, and, accordingly, it is deemed abandoned. See *Mundell v. Mundell*, 110 Conn. App. 466, 478, 955 A.2d 99 (2008) ("[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court" [internal quotation marks omitted]).

in Bridgeport identified as 2600 Park Avenue, unit 10B, and 155 Brewster Street, unit 3D. The plaintiff leased these premises to Aaron Hochman pursuant to the terms of a residential rental agreement, with an appended option to purchase. The term commenced on August 16, 2006, and ended on February 15, 2007, for a total rent of $46,110, payable in monthly installments. The agreement provided that Hochman might use unit 10B as a private dwelling for the defendant and himself, and unit 3D as a private dwelling for himself only. Paragraph 1[2] of the agreement expressly stated that the words "I," "me" and "my" as used in the agreement referred to the tenant, Hochman. Paragraph 2[3] expressly stated that the words "you" and "your" referred to the landlord, the plaintiff herein.

Paragraph 15 of the agreement, entitled "Default/ Holding Over," separately was acknowledged and agreed to by both Hochman and the defendant, as their signatures appear at the bottom of this paragraph. The defendant's signature appears nowhere else in the agreement. Paragraph 15 (a)[4] provided for damages, including reasonable legal fees, to be paid to the plaintiff upon default. In paragraph 15 (b),[5] Hochman agreed

[2] Paragraph 1 of the agreement, entitled "Tenant," provides: "The words 'I', 'me' and 'my' in this [r]ental [a]greement . . . refer to the [t]enant. The following person is the [t]enant: Aaron Hochman 115 Brewster Street, Unit 3D Bridgeport, CT."

[3] Paragraph 2 of the agreement, entitled "Landlord," provides: "The words 'you' and 'your' refer to the [l]andlord who is: Brewster Park, LLC c/o Michael Weinshel 418 Meadow Street Suite 201 Fairfield CT 06824."

[4] Paragraph 15 (a) of the agreement provides: "Upon default, I must pay your damages, including reasonable legal fees, the costs of re-entering, re-letting, cleaning and repairing the property."

[5] Paragraph 15 (b) of the agreement provides: "In no event may I hold over. We, the undersigned, agree to vacate the [p]roperty (i) on or before February 15, 2007, or (ii) if applicable, on September 17, 2007, or (iii) not later than thirty (30) days after we receive notice of default and do not cure the same within thirty (30) days. Hochman shall indemnify you and hold you harmless in the event we do not vacate on time. This shall include, but not be limited to, any costs of eviction, attorney's fees, sheriff's fees and court costs. We acknowledge that our representations that we will not hold

that he may not hold over and that he would indemnify and hold the plaintiff harmless, to include costs and attorney's fees, if he and the defendant did not vacate the premises in a timely manner. Pursuant to the agreement, both Hochman and the defendant agreed to vacate by February 15, 2007, or no later than thirty days after their receipt of a notice of default and failure to cure the same, and both acknowledged that their representations that they would properly vacate the premises were relied on by the plaintiff.

The record reveals that the defendant was employed in some capacity by Hochman and that he used unit 10B throughout the term of the agreement, beginning on August 16, 2006, and continued to use it for several months after the date he agreed to vacate. No rent was ever paid by Hochman, and on November 10, 2006, the plaintiff caused a notice to quit by November 17, 2006, to be served on the defendant. The defendant remained in possession of the premises, and he testified that although he was aware of the notice to quit, he had discussed the matter with Hochman, who stated that he would take care of it. Thereafter, the plaintiff instituted a summary process action to evict the defendant, which ended in a judgment in favor of the plaintiff by stipulated agreement for possession by July 15, 2007. No costs were awarded in that judgment.

The present action was initiated by the plaintiff to recover damages from the defendant for his alleged wrongful use and occupancy of the premises and to recover all costs associated with the eviction action. At the conclusion of the trial, the court found the fair market value for unit 10B to be $3400 per month and

over is being relied upon by you, as consideration for you granting both the tenancy and the option to purchase, and that it would be unjust and inequitable if you were forced to incur additional costs and damages as a result of our failure to vacate.

"Acknowledged and agreed to . . . Aaron Hochman [and] Fred Berger."

awarded damages for the defendant's use and occupancy from November, 2006, when he became aware of the default for nonpayment of rent, until July 15, 2007, when he vacated the premises. In addition, the court concluded that paragraph 15 (a) of the agreement held that the defendant was personally responsible upon default for reasonable attorney's fees. The court then noted that attorney's fees may be awarded when permissible by statute or contract and, without further explanation, awarded the plaintiff $7500 as reasonable attorney's fee. The court proceeded to render judgment in favor of the plaintiff for $36,400. This appeal followed.

I

The defendant first asserts that the plaintiff did not allege sufficiently a claim for use and occupancy. He argues that the plaintiff's complaint, instead, only sought damages for unjust enrichment and retention of the benefit of the unit. We do not agree.

Because the interpretation of pleadings is an issue of law, our review is plenary. *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 746, 793 A.2d 1118 (2002). The plaintiff's complaint expressly alleges that the defendant was given the right to use and to occupy the premises pursuant to the rental agreement between the plaintiff and Hochman, that he did so use and occupy the premises, that no rental payments were made and that he was aware of the fact that rental payments were not being made. It further alleges that the defendant was unjustly enriched by the benefit of his use and occupancy and that he owes the plaintiff the payment of reasonable use and occupancy for the premises from August 16, 2006, to July 15, 2007.

The defendant correctly asserts that there was no reference in the complaint to General Statutes § 47a-3c,[6]

---

[6] General Statutes § 47a-3c provides: "In the absence of agreement, the tenant shall pay the fair rental value for the use and occupancy of the dwelling unit."

which provides for the remedy of use and occupancy payments. Although a plaintiff generally is required to identify specifically any statute on which a particular action is grounded; see Practice Book § 10-3 (a); "our courts repeatedly have recognized that [this rule] is directory and not mandatory." (Internal quotation marks omitted.) *Burton* v. *Stamford*, 115 Conn. App. 47, 65, 971 A.2d 739, cert. denied, 293 Conn. 912, 978 A.2d 1108 (2009). The plaintiff is not barred from recovery thereby as long as the defendant sufficiently was apprised of the nature of the action. *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003); see also *Caruso* v. *Bridgeport*, 285 Conn. 618, 629, 941 A.2d 266 (2008) ("[t]he critical consideration under § 10-3 [a] . . . is whether the [defendant was] on notice of the statutory basis for the plaintiff's claims"). Our review of the record reveals that the plaintiff's claim for use and occupancy was raised distinctly at trial and clearly set forth in its complaint. Additionally, the defendant cannot claim that he did not have knowledge of the statutory ground for the use and occupancy claim, as the plaintiff specifically identified § 47a-3c in its pretrial memorandum of law. See *LeBlanc* v. *Tri-Town Shelter Services, Inc.*, 110 Conn. App. 118, 121 n.2, 955 A.2d 55 (2008) (plaintiff adequately invoked claim for use and occupancy pursuant to § 47a-3c by explicitly raising issue in trial brief). Accordingly, the defendant's claim fails.

## II

Next, the defendant claims that the court erroneously found that by signing below paragraph 15 of the rental agreement he had bound himself to a claim for use and occupancy. The defendant, however, has misconstrued the memorandum of decision and, thus, failed to understand the foundation for the court's award of damages for use and occupancy.

Our reading of the decision reveals that the court did not award use and occupancy damages pursuant to paragraph 15, as it expressly found that the defendant was not the signor of the lease and therefore was not liable for all the terms of the agreement. It concluded, however, that this did not relieve the defendant of any obligation to the plaintiff, as he had resided in unit 10B for nearly nine months after being put on notice to quit possession of the premises. Referring to its equitable powers and citing *Welk* v. *Bidwell*, 136 Conn. 603, 73 A.2d 295 (1950),[7] the court determined that it was able to provide a remedy in a situation where a person occupies certain premises even though the occupation is without an oral or written rental agreement. Accordingly, the court awarded the plaintiff damages for the defendant's use and occupancy of the premises from the time he was on notice of the default for nonpayment of rent in November, 2006, until he vacated in July, 2007.

The court's award was not made, as argued by the defendant, because of any obligation he had undertaken pursuant to the lease. Nor did the court find that he had "bound himself to a claim for use and occupancy" by signing a portion of the agreement. To the contrary, the remedy of use and occupancy payments was ordered because an agreement between the parties was absent. See *Sippin* v. *Ellam*, 24 Conn. App. 385, 392, 588 A.2d 660 (1991). Consequently, we conclude that

[7] In *Welk*, the defendant tenant leased from the plaintiff landlord a tobacco barn on a month-to-month basis for a monthly rental of $10. *Welk* v. *Bidwell*, supra, 136 Conn. 605. Prior to the expiration of one year's term, the landlord sought to increase the rent to $125 per month. Id. The defendant refused to pay the increased rent, held over, and continued to pay $10 per month. Id. The landlord thereafter brought an action to collect the difference between $10 and $125 per month. Id., 606. Our Supreme Court concluded that the landlord could not impose the increased rent on the tenant, as the defendant's refusal to agree to the new rent left the parties without an enforceable lease agreement. Id., 608. It concluded, however, that the defendant was liable to the plaintiff for the reasonable rental value of the property he occupied while holding over. Id., 609.

the defendant's signature at the bottom of paragraph 15 did not foster the court's award for use and occupancy damages.

"A tenancy at sufferance arises when a person who came into possession of land rightfully continues in possession wrongfully after his right thereto has terminated. . . . After a notice to quit has been served . . . a tenant at sufferance no longer has a duty to pay rent. He still, however, is obliged to pay a fair rental value in the form of use and occupancy for the dwelling unit." (Citations omitted; internal quotation marks omitted.) Id., 391. The court found from the evidence presented that the fair market value for unit 10B was $3400 per month, and it awarded the plaintiff use and occupancy damages in accordance with this figure. Not only was this award statutorily permissible; see General Statutes § 47a-3c; but, in our view, the court's use of fair market value to determine the plaintiff's damages, as opposed to the fixed rental price expressed in the agreement,[8] buttresses our conclusion that the court's use and occupancy award was not ordered on the basis of paragraph 15, or the defendant's signature thereto. Accordingly, we agree with the plaintiff that the court's award for use and occupancy was proper.

### III

Finally, the defendant claims that the court's award of attorney's fees was improper. We agree.

Attorney's fees are not allowed to the prevailing party absent a contractual or statutory exception. *Trugreen Landcare, LLC* v. *Elm City Development & Construction Services, LLC*, 101 Conn. App. 11, 14, 919 A.2d 1077 (2007). In the present case, the court, after reciting *Welk* v. *Bidwell*, supra, 136 Conn. 603, as authority for

---

[8] The court found that the agreed on monthly rental price was $3842. This figure was not used in the court's use and occupancy damages calculation.

its awarding damages for use and occupancy, then considered, *in addition*, the defendant's potential obligations under paragraph 15 (a) of the rental agreement. The court determined that the defendant had some personal liability pursuant to that paragraph, and it proceeded to award the plaintiff $7500 as reasonable attorney's fees.

The defendant claims that language of paragraph 15 (a) only contemplated holding Hochman liable for attorney's fees. Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. *Neubig* v. *Luanci Construction, LLC*, 124 Conn. App. 425, 432, 4 A.3d 1273 (2010). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Creatura* v. *Creatura*, 122 Conn. App. 47, 52, 998 A.2d 798 (2010). Our threshold determination, therefore, "is whether . . . the provision at issue is clear and unambiguous, which is a question of law over which our review is plenary." *Isham* v. *Isham*, 292 Conn. 170, 181, 972 A.2d 228 (2009).

With these principles in mind, we turn to the relevant contractual language in the rental agreement between Hochman and the plaintiff. As set forth previously, paragraph 1 of the agreement defines the term "I" as used in the agreement as Hochman. See footnote 2 of this opinion. Paragraph 15 (a) provides: "Upon default, *I* must pay your damages, including reasonable legal fees, the costs of re-entering, re-letting, cleaning and

repairing the property." (Emphasis added.) Paragraph 15 (b) provides: "In no event may I hold over. *We, the undersigned,* agree to vacate the [p]roperty [on time]. . . . Hochman shall indemnify you and hold you harmless in the event we do not vacate on time. This shall include, but not be limited to, any costs of eviction, attorney's fees, sheriff's fees and court costs." (Emphasis added.) Both Hochman's and the defendant's signatures appear at the bottom of this paragraph.

The court rejected the defendant's argument that, on the basis of the express language in paragraph 1 and paragraph 15, only Hochman was liable for attorney's fees. Although the court concluded that the defendant had no liability for damages under paragraph 15 (b), it concluded otherwise with respect to paragraph 15 (a). The court found that while paragraph 1 defined Hochman as "I" in the agreement, the reference to "I" in paragraph 15 did not refer to Hochman alone, as both he and the defendant signed the bottom of that paragraph. The court reasoned that the clear intent in having the defendant sign at the bottom of paragraph 15 was to inform him of his obligations under the terms of that paragraph. Accordingly, the court found that the defendant had personal liability pursuant to the rental agreement under paragraph 15 (a), which included liability for reasonable costs and attorney's fees.

We conclude that a plain reading of paragraph 15 (a), in conjunction with paragraph 1, clearly and unambiguously obligated only Hochman to be personally liable for damages, including costs and legal fees, in the event of default. In our view, to assign liability to the defendant pursuant to paragraph 15 (a), despite the fact that the term "I" is defined precisely in the agreement as referring to Hochman alone, would require a tortured and unreasonable interpretation. See *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.,* 252 Conn. 479, 499, 746 A.2d 1277 (2000). Our conclusion

is strengthened by the fact that paragraph 15 (b) provides that "[w]e, the undersigned, agree to vacate the [p]roperty [on time]." The use of the term "we" in this clause, and not in paragraph 15 (a), indicates that the parties intended that the defendant be responsible for timely vacating the premises and nothing more. Consequently, we conclude that the language of the agreement does not support the court's award of attorney's fees against the defendant.

The judgment is reversed only as to the award of attorney's fees and the case is remanded with direction to vacate that award. The judgment is affirmed in all other respects.

In this opinion DiPENTIMA, C. J., concurred.

BEAR, J., dissenting in part and concurring in part. Although I respectfully disagree with the analysis set forth in part II of the majority opinion, I nevertheless concur in the result reached, affirming the trial court's damages award. I cannot join, however, in part III of the opinion, reversing the judgment as to the award of attorney's fees. I conclude that pursuant to paragraph 15 (a) of the lease agreement, the defendant, Fred Berger, with respect to 2600 Park Avenue, unit 10B, Bridgeport, not only is liable after default for use and occupancy, but also is liable for the attorney's fees awarded to the plaintiff, Brewster Park, LLC, by the trial court. Accordingly, I would affirm the judgment of the trial court.

Paragraph 15 (a) of the lease provides: "Upon default, I must pay your damages, including reasonable legal fees, the costs of re-entering, re-letting, cleaning and repairing the property." As I will set forth, the "I" in paragraph 15 (a) refers to the defendant. In paragraph 15 (b), "I" also refers to the defendant. This is because Aaron Hochman, the primary tenant signatory to the

lease, is referred to by name in paragraph 15 (b) of such lease.

Paragraph 15 (b) of the lease provides: "In no event may I hold over. We, the undersigned, agree to vacate the [p]roperty (i) on or before February 15, 2007, or (ii) if applicable, on September 17, 2007, or (iii) not later than thirty (30) days after we receive notice of default and do not cure the same within thirty (30) days. Hochman shall indemnify you and hold you harmless in the event we do not vacate on time. This shall include, but not be limited to, any costs of eviction, attorney's fees, sheriff's fees and court costs. We acknowledge that our representations that we will not hold over is being relied upon by you, as consideration for you granting both the tenancy and the option to purchase, and that it would be unjust and inequitable if you were forced to incur additional costs and damages as a result of our failure to vacate.

"Acknowledged and agreed to . . . Aaron Hochman [and] Fred Berger."

I arrive at this conclusion although paragraph 1 of the lease provides in relevant part: "The words 'I,' 'me' and 'my' in this [r]ental [a]greement . . . refer to the [t]enant. The following person is the [t]enant: Aaron Hochman 115 Brewster Street, Unit 3D Bridgeport, CT."

After closely examining the lease in its entirety, I conclude that the language in paragraph 1, defining "I," "me" and "my," as set forth at the beginning of the lease, does not apply to paragraph 15 of the lease, although that is not specifically set forth anywhere in the lease. The only clear and logical reading of paragraph 15 (a) is that in that paragraph, "I" refers to the defendant. In paragraph 15 (b), "I" also refers solely to the defendant, and "we" refers to Hochman and the defendant. The import of paragraph 15 (a) is that for unit 10B, the defendant is liable for subsequent charges

after default, including use and occupancy and attorney's fees. If the defendant were not the "I" in paragraph 15 (a), there would have been no need to name Hochman and to set forth his liability for "any costs of eviction, attorney's fees, sheriff's fees and court costs" in paragraph 15 (b).

Further, the defendant, by his signature at the bottom of paragraph 15, did more than acknowledge the contents of the subsections. He "[a]cknowledged and agreed to" them.

The foregoing interpretation of paragraph 15 (a) comports with our law: "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 183, 2 A.3d 873 (2010).

The foregoing analysis also finds support in the trial court's decision. The trial court also examined the defendant's liability under paragraph 15 and found the following: "The defendant in this case was named as an occupant of the dwelling 2600 Park Avenue, unit 10B, along with Aaron Hochman. The defendant's name and signature further appear on the lease at paragraph

15 entitled 'Default/Holding Over.' The defendant's signature does not appear anywhere else in the document."

The court also stated: "In addition, the court must also consider the defendant's obligations under paragraph 15 of the lease between Hochman and the plaintiff.

"Paragraph 15 of the lease is divided into two separate paragraphs. The subsection (a) deals with actions upon default, and subsection (b) deals with actions upon a holdover. The subsection (b) says in part, 'Hochman shall indemnify you and hold you harmless in the event we do not vacate on time. This shall include, but not be limited to, any costs of eviction, attorney's fees, sheriff's fees and court costs.' [Although] the language of the subsection contains the words, '[w]e, the undersigned,' it clearly states also that Hochman shall be responsible for damages under subsection (b). The court finds that this limits the liability as to this defendant under this subsection.

"The court now turns its attention to the subsection (a) of the rental agreement. The tenancy between Hochman and the plaintiff began on August 16, 2006, and ended on February 15, 2007, subject to an extension provided in the addendum attached to the agreement. The plaintiff testified that no rent was ever paid by Hochman, and they began eviction proceedings in November, 2006. The defendant testified that he resided at 2600 Park Avenue, unit 10B, all the relevant time of the agreement. He further testified that he was aware of the notice to quit in November, 2006, and that he discussed the notice with Hochman. Although the defendant stated that Hochman told him he would take care of it, clearly the defendant had notice of the default as of November, 2006.

"The defendant argues that even though he may have had notice of the default, he was not obligated under

subsection (a) because the language of the paragraph states, 'Upon default, I must pay . . . .' *The defendant contends that 'I' is Hochman, the signer of the lease. The court does not agree with this analysis as to paragraph 15 only.* To accept the defendant's argument would beg the question of the purpose of his signature appearing at that time and at that place on the document. The clear intent of having the defendant sign the bottom of the paragraph was to inform him of his obligations under the terms of the paragraph.

"Accordingly, the court finds that the defendant does have some liability under paragraph 15 of the rental agreement." (Emphasis added.)

The court concluded that the defendant was contractually obligated to pay the plaintiff's reasonable attorney's fees: "Lastly, the plaintiff is entitled to attorney's fees. The court has previously indicated that paragraph 15 holds the defendant personally responsible upon his default. The paragraph specifically states the person(s) liable must pay damages, including reasonable attorney fees. Furthermore, the court may award attorney fees as an item of damages when allowed by statute or contract. *Bushnell Plaza Development Corp.* v. *Fazzano*, 38 Conn. Sup. 683, 687, 460 A.2d 1311 (1983). The court finds that the plaintiff is awarded $7500 as reasonable attorney's fees."

The trial court found, and I agree, that the defendant is liable for attorney's fees pursuant to paragraph 15 (a) of the agreement. Accordingly, I respectfully dissent from part III of the majority opinion that holds otherwise. I conclude that the judgment of the trial court should be affirmed.

For the foregoing reasons, I dissent in part and concur in part.